**PARAGON GROUP, INC., Respondent,**

v.

**Noel AMPLEMAN, Appellant.**

**No. 65019.**

Missouri Court of Appeals,
Eastern District,
Division One.

June 28, 1994.

Noel Ampleman, pro se.

Thomas J. Noonan (Gary K. Burger, Jr., co-counsel), St. Louis, for respondent.

CRIST, Judge.

Noel Ampleman (Tenant) appeals from the judgment of the trial court finding in favor of Paragon Group, Inc. (Landlord) in its action to recover a termination fee from Tenant after she terminated their lease with nine months remaining in the lease term. We affirm.

On May 1, 1990, Tenant and Landlord entered into a lease agreement providing

Tenant would lease from Landlord Apartment C at 386 Woodgreen in Ballwin, Missouri. The lease term was for one year. Tenant's total rental payments were $5,520, payable in monthly installments of $460. Tenant placed a $100 security deposit on the apartment. Tenant took possession of the premises that day and paid her rent for May, June, and July.

The lease in question provided in paragraph 11 that Tenant could terminate the lease by giving thirty days' written notice. However, the lease further stated:

> If the effective date of such termination shall be prior to the twenty-fifth (25th) consecutive month during which Resident shall have been a party to a lease within the Apartment Community in which the Leased Premises are located, then Resident shall pay to Apartment Company, with the notice hereinabove required, and in addition to the payment of rent and all other amounts, if any, due hereunder as hereinabove set forth, an amount equal to two (2) month's rent due hereunder. In addition to the required payments hereinabove set forth, Apartment Company may elect to deduct any portion of the security deposit from the amount equal to two (2) month's [sic] rent due hereunder. Nothing in this paragraph shall be construed to limit the right of Apartment Company to recover actual damages in excess of the security deposit.

On July 3, 1990, Tenant provided Landlord with written notice of her intent to terminate the lease on August 1, 1990. In response, Landlord advised Tenant she had to pay $45.36 for rent from August 1 to August 3, as well as a termination fee of $920, an amount equal to two months' rent. Tenant paid the $45.36 but refused to pay the $920 termination fee. On August 9, 1990, Landlord wrote Tenant to advise her it was retaining her $100 security deposit as a credit against the $920 termination fee, leaving a remaining balance of $820.

On May 6, 1991, Landlord filed suit against Tenant to recover the termination fee of $920 less the $100 security deposit retained. Landlord also requested reimbursement of attorney's fees as provided in the lease.

Tenant failed to answer until April 7, 1993. In that answer, Tenant included a counterclaim for the return of her $100 security deposit, which she alleged had been wrongfully withheld. Trial was held on June 24, 1993. The trial court entered its judgment finding in favor of Landlord and awarding it $820 in damages and $273.32 in attorney's fees plus court costs. The court further found against Tenant on her counterclaim.

In response to Tenant's appeal, Landlord has filed a motion to dismiss. Landlord contends Tenant has failed to comply with Rule 84.04(c) in writing her Statement of Facts in a one-sided argumentative manner. We overrule Landlord's motion. Tenant's Statement of Facts substantially complies with Rule 84.04(c) and provides sufficient information for appellate review of the issues. *See, Whalen v. College of Ozarks, Inc.,* 851 S.W.2d 682, 683[2] (Mo.App.1993) (substantial compliance with Rule 84.04(c) required). Further, although the statement is not perfect, it is not of the type requiring dismissal of appeal. *See, Eastin v. Franklin,* 806 S.W.2d 57, 59[3] (Mo.App.1991) (decline to dismiss where no attempt to distort or misrepresent the facts). Motion overruled.

In Point I, Tenant argues the trial court erred in awarding Landlord the termination fee. She avers the amount is not proper liquidated damages, but rather, an improper penalty clause.

■ We must sustain the judgment of the trial court unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or misapplies the law. *Murphy v. Carron,* 536 S.W.2d 30, 32[1] (Mo. banc 1976); *Taos Const. Co. v. Penzel Const. Co.,* 750 S.W.2d 522, 525 (Mo.App.1988).

■ The general rule is liquidated damages clauses are valid and enforceable, while penalty clauses are invalid. *Taos,* 750 S.W.2d at 525[1]. Liquidated damages are a measure of compensation which, at the time of contracting, the parties agree shall represent damages in case of breach. *Goldberg v. Charlie's Chevrolet, Inc.,* 672 S.W.2d 177, 179[4] (Mo.App.1984). Penalty clauses, on

the other hand, are a punishment for breach. *Id.* at 179[5].

Missouri has adopted the Restatement of Contracts rules regarding liquidated damages. *Grand Bissell Towers v. Joan Gagnon Ent.*, 657 S.W.2d 378, 379 (Mo.App. 1983). These rules provide a guide to distinguishing between the two clauses. For a damages clause to be valid liquidated damages: (1) the amount fixed as damages must be a reasonable forecast for the harm caused by the breach; and (2) the harm must be of a kind difficult to accurately estimate. *See,* Restatement (First) of Contracts § 339 (1932); Restatement (Second) of Contracts § 356 (1979) (amended § 339, but retained the same basic analysis); *Burst v. R.W. Beal & Co., Inc.*, 771 S.W.2d 87, 90[2] (Mo.App. 1989); *Muhlhauser v. Muhlhauser*, 754 S.W.2d 2, 5[5] (Mo.App.1988). Finally, Landlord must show some harm or damage occurred to it as a result of Tenant's termination before the liquidated damages clause is triggered. *Goldberg,* 672 S.W.2d at 179[7].

Tenant first avers the $920 amount is not a reasonable forecast of damages to be incurred by Landlord. For the amount to be a reasonable forecast of damages, "it must not be unreasonably disproportionate to the amount of harm anticipated when the contract was made." *Burst,* 771 S.W.2d at 90[2]. In addition, the comments to the Restatement (Second) of Contracts § 356, reveal:

> The amount fixed is reasonable to the extent that it approximates the actual loss that has resulted from the particular breach, even though it may not approximate the loss that might have been anticipated under other possible breaches.... Furthermore, the amount fixed is reasonable to the extent that it approximates the loss anticipated at the time of the making of the contract, even though it may not approximate the actual loss.

Comment b; *See also, Luna v. Smith,* 861 S.W.2d 775, 779 (Mo.App.1993).

In the case at hand, the termination fee equalled two months' rent ($920). The original term of the lease was for one year, for total payments of $5,520. When Tenant breached the lease, nine months remained on the lease, or payments totalling $4,140. We believe $920 is not an unreasonable estimate of the damages Landlord would incur upon breach of a $5,520 lease when nine months remained in the lease term. *See, e.g., Standard Imp. Co. v. DiGiovanni,* 768 S.W.2d 190, 191–92[1] (Mo.App.1989) (liquidated damages clause equal to 30% of home improvement contract price was valid to terminate contract one month after execution); *Taos,* 750 S.W.2d at 525–26 (liquidated damages equalling 66% of value of subcontract was reasonable).

Tenant further contends the amount of Landlord's damages would not be difficult to ascertain. We disagree. Missouri courts have consistently held actual damages for breach of real estate sales contracts are uncertain and difficult to prove. *See, Warstler v. Cibrian,* 859 S.W.2d 162, 165[7] (Mo.App. 1993); *Highland Inns Corp. v. Am. Landmark Corp.*, 650 S.W.2d 667, 674[16] (Mo. App.1983). Like real estate contracts, it is difficult to measure damages upon breach of a lease by the tenant. While the amount of rent due under the lease is easily measurable, it is hard to say how long the apartment will be vacant or how much time, expense and energy will be expended to re-let the premises. It is also difficult to estimate whether or how many prospective long-term tenants were turned away while the leasing tenant occupied the premises or how this damaged the landlord. Contrary to Tenant's assertions, it is even harder to measure the damages of a large apartment complex where marketing and leasing activities are occurring daily. In that situation, putting a price on Landlord's damages is difficult at best. Where the difficulty of loss is great, significant latitude is allowed in setting the amount of anticipated damages. *Luna,* 861 S.W.2d at 779; Rest.2d Contracts § 356 comment b.

Accordingly, we find the trial court did not err in finding the clause in question was a valid liquidated damages clause. Point denied.

In Point II, Tenant argues the trial court erred by awarding Landlord both the liquidated damages and attorney's fees. Tenant contends recovery for attorney's fees is in reality recovery for actual damages, which is

prohibited by Landlord's recovery of liquidated damages.

■ Generally, both liquidated damages and actual damages may not be awarded as compensation for the same injury. *See, Warstler*, 859 S.W.2d at 165[8]; *Germany v. Nelson*, 677 S.W.2d 386, 388[4] (Mo.App.1984). This is because liquidated damages are merely a replacement for recovery of actual damages, a stipulation of actual damages. *Warstler*, 859 S.W.2d at 165; *Burst*, 771 S.W.2d at 91–92. However, expenses of litigation and attorney's fees are generally not recoverable as actual damages. *See, Ashworth v. Schneider*, 667 S.W.2d 16, 17[2] (Mo.App. 1984). Any recovery of attorney's fees is solely based on statute or contract. *Id.* In this case, the lease provided for recovery of one-third as attorney's fees in the event of any breach by Tenant. The lease further stated the termination fee was over and above any other amounts owed. We find no error in allowing recovery for both liquidated damages and attorney's fees as provided in the lease. Point denied.

■ Finally, Tenant contends the trial court erred in ruling against her on her counterclaim to recover the $100 security deposit. In response to Landlord's suit to recover the $920 termination fee, Tenant filed a counterclaim against Landlord. Tenant alleged in her counterclaim she paid a $100 security deposit and Landlord had failed to return it. She further alleged Landlord had wrongfully withheld the deposit in contravention of § 535.300, RSMo 1986. She requested damages in the amount of $200, twice the amount wrongfully withheld, as provided in § 535.300.5. In its decision, the trial court found against Tenant on her counterclaim. However, the trial court awarded Landlord only $820 on its claim, $100 less than the $920 termination fee. Landlord had only requested recovery of $820 in its petition, giving Tenant a credit for her $100 security deposit.

Section 535.300.2 provides a landlord shall, within 30 days after termination of tenancy, either return the full amount of any security deposit or furnish the tenant a written itemized list of damages for which the security deposit is withheld. The statute further states the landlord may only withhold from the security deposit:

only such amounts as are reasonably necessary for the following reasons:

(1) To remedy a tenant's default in the payment of rent due to the landlord, pursuant to the rental agreement;

(2) To restore the dwelling unit to its condition at the commencement of the tenancy, ordinary wear and tear excepted; or

(3) To compensate the landlord for actual damages sustained as a result of the tenant's failure to give adequate notice to terminate the tenancy pursuant to law or the rental agreement; provided that the landlord makes reasonable efforts to mitigate damages.

§ 535.300.3. Whenever a landlord wrongfully withholds any part of the security deposit, the tenant "shall recover damages not more than twice the amount wrongfully withheld." § 535.300.5.

In defining the term "wrongfully," the Western District stated:

The term 'wrongfully' in the statute should not be read as describing the manner in which the security deposit was withheld, but should be interpreted as referring to the enumerated provisions immediately preceding paragraph 5.

*Battis v. Hofmann*, 832 S.W.2d 937, 940[3] (Mo.App.1992).

In the case at hand, Landlord complied with the statute to the extent it notified Tenant within 30 days of its intention to retain the security deposit. However, Landlord retained the deposit as a credit against the $920 termination fee which Tenant had not paid. Tenant contends this is not a valid reason listed in § 535.300.3.

We find Landlord's reason falls within § 535.300.3(1), which allows Landlord to withhold amounts from the security deposit to remedy Tenant's "default in the payment of rent...." Here, Tenant defaulted in paying the rent due Landlord for the duration of the lease. The lease provided for liquidated damages of $920 to compensate Landlord for Tenant's default in the payment of rent required pursuant to the lease. Tenant re-

fused to pay the liquidated damages. Landlord properly retained the $100 security deposit to remedy Tenant's failure to pay the liquidated damages. Point denied.

Judgment affirmed.

CRANDALL, P.J., and REINHARD, J., concur.